# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### ALLEGHENY COUNTY.

OCTOBER AND NOVEMBER TERM, 1882, No. 101. OCTOBER 18, 1882.

## Arnsthal *versus* Patterson.

1. A lease provided that the lessee should have the right to continue it from year to year, at a rental to be fixed as follows: " Lessee to appoint in writing to lessor on or before December 1, prior to end of such lease, a reputable freeholder as an appraiser, whereafter lessor, on the 3d of said December, shall appoint another, which two appraisers shall be sworn by the alderman of said ward, and shall fix the advance, if any, of the rent for the year from the 31st of March then next following," &c. November 29 following, the lessee gave written notice to the lessor that he would continue use of the premises "according to the terms of our lease." *Held* that this notice was entirely insufficient to continue the lease.

2. The Court has jurisdiction to issue a *certiorari* at the instance of the landlord to a justice upon proceedings to obtain possession under the act of December 14, 1863, P. L., 1125.

Before SHARSWOOD, C. J.; MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas No. 1 for *Allegheny County*.

*Certiorari* issued by the Court below to an alderman of the city of Pittsburgh to remove the record of proceedings commenced under the act of December 14, 1863, P. L., 1125, by T. H. Baird Patterson, trustee for the devisees of Joseph Patterson, deceased, against A. Arnsthal, to recover possession of demised premises.

The lease, dated September 24, 1881, created a term for seven twelfths of a year, and provided, *inter alia :*

"The lessee to have the right, within the period of five years from date, to continue existing lease from year to year, at rental to be fixed as follows : Lessee to appoint, in writing to lessor, on or before December 1, prior to end of such lease, a reputable freeholder as an appraiser, whereafter lessor, on the 3d of said December, shall appoint another, which two appraisers shall be sworn by the alderman of said ward, and shall fix the advance, if any, of the rent for the year, from the 31st of March then next following ; and if unable to agree thereon, then said two appraisers to choose a third like appraiser, who shall be sworn in like manner, and join with them in fixing said advance in rent before the 15th day of said December, at which advance of rent lessee to have the right to elect, in writing, before the 25th day of said December, to refuse or continue existing lease for said next year, and so on from year to year, until the expiration of said period, same to bind lessor."

On November 29, 1881, the defendant served the following notice on the plaintiff :

"Mr. T. H. BAIRD PATTERSON, *Trustee :*

"SIR : I hereby notify you that I will continue use of rooms 45 and 47 Sixth street, now occupied by me as billiard rooms, according to the terms of our lease.

"A. ARNSTHAL.

"PITTSBURGH, *November 29, 1881.*"

The lessor, on the 31st of December, 1881, gave the tenant notice that he would require possession on April 1, 1882. Possession not being given up on that day, he commenced these proceedings.

The alderman's transcript set forth *inter alia* as follows :

"And now, April 17th, 3, P. M., after carefully considering the proofs and allegations, and finding the facts as set forth in the foregoing complaint, viz : 'That the term of said demise is fully ended and expired,' are not proven, I find that said lease did not expire on March 31st, 1882, or thereabouts, because the defendant notified the plaintiff on November 29th, 1881, of his intention to continue the occupancy according to the provisions of the lease, and I find that under the terms of said lease, the defendant had a right to continue said lease from

[Arnsthal v. Patterson.]

year to year for five successive years, at a rent to be fixed or mutually agreed upon by plaintiff and defendant through such appraiser as they might severally select. I further find, after hearing all witnesses on both sides on the question of forfeiture of lease for breach of covenants and conditions, that said lease has not been forfeited and such breaches have not been made or taken place. I hereby enter judgment publicly in favor of defendant and against plaintiff, and dismiss the complaint at the cost of plaintiff." .

On June 15, 1882, the Court reversed the judgment of the alderman, STOWE, J., delivering the following opinion:

"When no evidence is given, nor facts from which the conclusion of the Justice is drawn, we cannot review his finding of facts on *certiorari*, and therefore we must take it, that under the evidence there was no forfeiture of the lease. But how is it with reference to the renewal of the lease? It may very possibly be that the conduct of plaintiff would estop him from relying upon the provisions in the lease that 'lessee is to have the right, within five years, to continue from year to year at a rental to be fixed, viz: Lessee to appoint in writing to lessor, on or before December 1 prior to the end of such lease, a reputable freeholder as an appraiser, whereafter lessor, on the 3d of said December, shall appoint another, which two . . . shall fix the advance, if any, of the rent for the year from the 31 March following,' &c.

But if so, the Justice has not so found. He merely says he finds said lease did not expire on March 31, 1882, or thereabouts, because the defendant notified the plaintiff on the 29th of November, 1881, of his intention to continue the occupancy according to the provisions of the lease, 'and I find that under the terms of the lease the defendant had a right to continue said lease from year to year for five successive years, at a rental to be fixed or mutually agreed upon by plaintiff and defendant, through such appraisers as they might severally select.' Now, the case shows its determination on 31st March, 1882, and without there was a renewal under the lease by a compliance with its provisions, that was the end of it, unless plaintiff, by his acts, had estopped himself from setting up such a claim. Whether he did or not, does not appear. Certainly, the Justice does not so find in terms, nor does he find any fact which would have had that effect. What he does find is that 'defendant notified the plaintiff on 29th of November, 1881, of his intention to continue the occupancy of the premises according to the provisions of

. [Arnsthal *v.* Patterson.]

the lease.' This is entirely insufficient. What he was to do was 'by writing to lessor, to appoint a reputable freeholder as an appraiser to fix the rent,' &c. This he did not do, and, therefore, the finding of the fact stated by the Justice does not sustain his conclusion as worked out by his judgment. It is stated by counsel in argument that the plaintiff would not give defendant a copy of the agreement upon application, made for that purpose, so that he might comply with it, nor inform him what it was necessary to do to continue the lease, and defendant was ignorant of the terms, and so notified plaintiff It may estop the plaintiff, but the fact is not found upon the record, and we cannot assume it to be true."

The lessee then took out a writ of error, assigning as errors that the Court had no jurisdiction, under the act by virtue of which these proceedings are instituted, over a *certiorari* issued at the instance of the landlord, or to set aside the judgment of the Justice under such procedure ; that the Court erred in reversing the judgment, in inferring facts not found by the alderman on his record, and that the reversal was based on a presumption of things not proven.

*Josiah Cohen*, for plaintiff in error.

By the terms of the act, a *certiorari* is only given to the tenant.

Evidence was submitted and discussed outside of the record.

Bedford *v.* Kelly, 61 Penna. St., 491.

The finding of the alderman that the lease had not expired presupposes that the terms of the lease, in reference to its renewal, were fully complied with, or were proven to have been performed by the tenant, or, if not performed, that proper evidence was abundantly sub-·mitted to the Justice, going to show that by the landlord's own evasions the tenant was prevented from performing the covenants incident to a renewal.

The court is not to look beyond the transcript : Commissioners *v.* Fickinger, 1 P. F. Smith, 48 ; Snyder *v.* Carfrey, 54 Penna. State, 93.

*Slagle & Wiley* for defendant in error.

At common law it has uniformly been held that the Supreme Court and Common Pleas Courts before the act of 1810, and since that act the Common Pleas Courts have power to review the proceedings of justices by *certiorari :* McClure *v.* White, Addison, 192 ; Wilt *v.* Philadelphia

and Lancaster Turnpike Company, 1 Brewster, 411 ; Constitution of 1874, article V, § 10.

The lower Court had the power on *certiorari* to rule upon the legality, sufficiency, and competency of the evidence on the record or returned therewith as part of the proceedings : O. & P. R. R. *v.* Brittian, 3 Pitts. L. J., 301 ; Morton *v.* Kilgore, 1 Yates, 251 ; Bradley *v.* Flowers, 4 *id.* 436.

It is clear that the notice of November 29, 1881, did not prevent the expiration of the lease, and therefore the reason for the finding of the magistrate failing, the finding itself must fall.

OCTOBER 25TH, 1882.—PER CURIAM : We affirm this judgment upon the opinion of the learned court below.

Judgment affirmed.

\

OCTOBER AND NOVEMBER TERM, 1882, No. 53.     OCTOBER 16, 1882.

## Arthurs *et al. vs.* Weisley.

A clause in a will directing the executors to convey certain real estate in the name of the testator, the funds for the purchase of which had been given by another, to that person in fee simple " as soon as she shall pay over to my said executors the balance due, as will appear in the accounts on my books," is so clear a recognition of the trust that it must preclude all attempts to set up the statute of limitations to defeat it, even if the will were subsequently revoked by marriage and birth of issue.

Before SHARSWOOD, C. J.; MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas No. 2 of *Allegheny County.*

Ejectment, commenced April 18, 1881, by Eleanor Weisley against Willa Arthurs, widow of Addison Arthurs, and W. A. Lewis, guardian of Addison E. Arthurs, minor child of Addison Arthurs, deceased, for the recovery of a three-story brick house, situated in the third ward of the city of Pittsburgh, Pa.

On the trial before KIRKPATRICK, J., the following facts appeared : In the year 1871, the plaintiff desired to purchase the property in dispute, then belonging to David Sands. Sands refused to make sale to her. She then